## Wm. J. Lemp Brewing Co. v. Ellen Lonergan and James O'Donnell.

1.   LANDLORD AND TENANT—*Termination of Leases.*—Section 9 of the statute in relation to forcible entry and detainer, providing that it shall not be necessary in case of default in any of the terms of a lease, to give more than ten days notice to quit, or of the termination of the tenancy, does not exclude the termination of a tenancy by the five days notice provided for in section eight of the same act.

**Forcible Entry and Detainer.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed December 16, 1897.

HOYNE, FOLLANSBEE & O'CONNOR, attorneys for appellant.

J. HENRY KRAFT, attorney for appellees.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Appellant, under the terms of a lease between it and appellees, entered judgment by confession in the Circuit Court for $489, balance alleged to be due for rent of premises described therein, being the basement of building numbered 87 and 89 Clark street, Chicago, for the months of April, May and June, 1896. On motion of defendants, this judgment was vacated, and leave given to defendants to plead. The issues were made, and a trial had before the court and a jury, resulting in a verdict and judgment for defendants, from which this appeal is prosecuted.

On the trial appellant offered in evidence said lease, which, by its terms, provided for payment of rent of said premises, at the rate of $210 per month, and, among other things, provided that "at the termination of this lease, by lapse of time or otherwise, second party shall yield up immediate possession to said party of the first part, and failing so to do, shall pay as liquidated damages, for the whole time such possession is withheld, the sum of ten dollars per day."

The agent of appellant, Mitchell D. Follansbee, testified that rent for the months of April, May and June, 1896, was unpaid, except the sum of $161, leaving a balance due of $469 to appellant; that said sum of $161 was paid by appellee O'Donnell, April 24, 1896; that the keys of the leased premises were left on his desk by O'Donnell and his attorney April 23d; that he declined to accept the keys, and told them they could leave them wherever they wished on their own responsibility; that he, as agent, would hold O'Donnell on the lease for its entire term; that he would

Wm. J. Lemp Brewing Co. v. Lonergan.

exercise no supervision over the premises, and should do nothing with the keys.    On cross-examination this witness said he was told Mr. Lonergan had moved out of the premises, and took all the stock with him; that he, as the agent of appellant, served on defendants a notice, of which the following is a copy, viz.:

To Ellen A. Lonergan and James O'Donnell:

You are hereby notified that there is now due us the sum of $210 and no cents, being rent for the premises situated in the city of Chicago, in Cook county, in the State of Illinois, and known and described as follows, viz.:   The basement of the building known as the Grand Opera House building, and numbered eighty-seven and eighty-nine Clark Street, Chicago, Illinois.

And you are further notified that payment of said sum so due has been demanded of you, and that unless payment thereof is made on or before the 23d day of April, A. D. 1896, your lease of said premises will be terminated. Hoyne, Follansbee & O'Connor is hereby authorized to receive said rent so due for me.

Dated this 17th day of April, A. D. 1896.

THE WM. J. LEMP BREWING COMPANY,
Landlord.
BY HOYNE, FOLLANSBEE & O'CONNOR,
Its Attorneys and Agents.

Appellees offered in evidence also the following letter received by appellee O'Donnell from the writers:

April 21, 1896.

MR. JAMES O'DONNELL,
Michigan Street, Near Dearborn Ave.,
Chicago.

DEAR SIR:  Lonergan refusing to pay his rent, we are going to close him up to-morrow, and also enter a judgment on the lease against you.  From present appearances, he is not going to do any better now than he has been doing before, and the sooner we find out where we stand the better.

If you will pay the rent before to-morrow at ten o'clock,

we will not enter up judgment and make costs; otherwise we most certainly shall.

Yours very truly,

HOYNE, FOLLANSBEE & O'CONNOR,

By Mitchell D. Follansbee.

Appellee O'Donnell also testified that said agent of appellant took the keys of the premises at the time they were offered to him, and said agent at that time stated there was $161 due for rent. This witness also testified that Mr. Lonergan moved out April 23, 1896.

John M. Lonergan testified that he acted as agent for his wife, and that he received the notice of April 17, 1896, on that day, at his place of business, at that time 87 and 89 Clark street, and kept it until April 23, 1896, when the keys were left with the agent of appellant, and that he was present when the keys were left with said agent.

The court, among other instructions for appellant, instructed the jury fully as to what was necessary in order to terminate a tenancy. And with other instructions for appellees gave the following:.

" The jury are instructed that the plaintiff herein had the right to terminate the tenancy, and if from the evidence you believe that by reason of a notice served upon the defendants, or otherwise, the plaintiff did terminate the tenancy, then, if you further find that the defendants did pay rent up to the time of the termination of such tenancy, and did surrender up the premises, your verdict should be for the defendants."

Appellant claims this instruction and others of a similar nature.given on behalf of appellees, were erroneous because they leave the jury to determine a mixed question of law and fact, to wit, whether or not the lease was terminated. But in this we think there could be no reversible error. As has been seen, the jury were fully instructed on behalf of appellant as to what was necessary in order to terminate the lease.

It is also claimed by appellant, that the evidence wholly fails to show a termination of the lease—that the five days

notice given to appellees was simply a threat, and they had no right to act upon it and vacate the premises.

Under the 8th section of the Landlord and Tenant Act, Ch. 80, Rev. Stat., the landlord may give such a notice, and the section then proceeds: "If the tenant shall not, within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended and sue for the possession, under the statute in relation to forcible entry and detainer, or maintain ejectment without further notice or demand."

It is true that section 9 provides that it shall not be necessary, in case of default in any of the terms of the lease, to give more than ten days' notice to quit, or of the termination of such tenancy, but we do not think that excludes the termination of a tenancy by the notice provided in section 8, as would seem to be intimated by the court in Dickinson v. Petrie, 38 App. 155. It has certainly been a common practice at the bar for twenty years past to make such a notice as the one given here, a basis for the termination of leases and suits of forcible entry and detainer by the landlord to regain possession of leased premises, and we think it is fully authorized by the statute. The termination of a tenancy by the notice prescribed in said section 8 is approved in Farnam v. Hohman, 90 Ill. 312, and Howland v. White, 48 Ill. App. 240.

The questions raised by appellant, that there is no evidence that this notice was served on appellees, that it is not shown that John M. Lonergan was the agent of appellee, Ellen Lonergan, were questions of fact for the jury, and we think there is sufficient evidence to justify a finding in the affirmative on both points.

This notice being served on appellees, and they being in receipt of the letter of April 21, 1896, threatening to close up Lonergan on April 22d, and to enter judgment on the lease against O'Donnell, appellees were entirely justified in taking appellant's agent at his word in the notice of April 17th, that unless the rent was paid on or before April 23d, the lease of said premises would be terminated, and pay the

rent to and including April 23d, and surrender possession · of the leased premises.

And particularly was this course justifiable on the part of appellees when a provision of the lease made them liable for $10 per day damages for every day possession should be withheld after the termination of the lease by lapse of time or otherwise.

There being no reversible error in the record, and the verdict of the jury being justified by the evidence, the judgment is affirmed.